UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOISE K. SIMMONS,<br><br>*Plaintiff*,<br><br>v.<br><br>LANGSTON LANE LIMITED PARTNERSHIP, *et al.*,<br><br>*Defendants.* | Civil Action No. 18-2169 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eloise K. Simmons brings this suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2–1401.01 *et seq.* Dkt. 16-1 at 1–2 (3d Am. Compl. ¶ 1). She alleges that Defendants—the companies that manage and own her apartment building and two employees involved in the building's management—discriminated against her in violation of these statutes when they denied her request for a ground-floor, three-bedroom apartment as an accommodation for her osteoarthritis and obesity. *Id.* at 2 (3d Am. Compl. ¶¶ 3–4). She also alleges that Defendants filed, in violation of the DCHRA, two retaliatory lawsuits against her after she engaged in certain protected activities, including complaining about her housing conditions. *Id.* at 3–4, 21–23 (3d Am. Compl. ¶¶ 7, 75–77). Now before the Court are the parties' cross-motions for partial summary judgment, each of which focuses on a different subset of Plaintiff's claims. Dkt. 62; Dkt. 67.

Defendants' motion for partial summary judgment focuses on Plaintiff's failure-to-accommodate claim. That motion argues that Simmons' request for an accommodation was unreasonable and that, in any event, no three-bedroom, ground-floor units were available to accommodate Plaintiff's request. Dkt. 62-2 at 5. But Defendants have failed to cite any law to support the proposition that Plaintiff's accommodation request was unreasonable, and they have failed to bear "the[ir] initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact" as to the unavailability of a ground-floor, three-bedroom apartment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). For these reasons and those that follow, the Court will **DENY** Defendants' motion for partial summary judgment, Dkt. 62.

Plaintiff's cross-motion for partial summary judgment, in turn, focuses on her retaliation claims, arguing that the undisputed facts establish that Defendants retaliated against her for engaging in protected activity. Dkt. 67. But because a reasonable jury could find that Defendants filed both of the allegedly retaliatory lawsuits for legitimate, non-retaliatory reasons, the Court will **DENY** Plaintiff's cross-motion for partial summary judgment as well.

## I. LEGAL STANDARD

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if it can "show[] that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. A fact is "material" if it could affect the outcome of the litigation under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *See Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

If the moving party carries its initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving party's favor with respect to the "element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). The nonmoving party's opposition, accordingly, must consist of more than unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. If the nonmoving party's evidence is "merely colorable" or "not significantly probative," the Court should grant summary judgment. *Liberty Lobby*, 477 U.S. at 249–50.

In conducting this analysis, the Court "review[s] the record taken as a whole." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). But at summary judgment, it is not the Court's function to "weigh the evidence" or to "make credibility determinations," *Wheeler*, 812 F.3d at 1113, in order to determine "the truth of the matter," *Liberty Lobby*, 477 U.S. at 249.

## II.  ANALYSIS

A.  **Failure to Accommodate**

The Fair Housing Act makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person[] or . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(2).  The Act defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B).  Like the FHA, the DCHRA prohibits discrimination on the basis of disability in the "sale or rental of real estate" or in the "terms, conditions, or privileges of sale or rental" thereof, D.C. Code § 2–1402.21(d)(1)–(2), and defines discrimination to include "[a] refusal to make reasonable accommodations," *id.* § 2–1402.21(d)(3)(B).  The ADA prohibits disability discrimination by both "public entit[ies]," 42 U.S.C. § 12132, and "public accommodation[s]," *id.* § 12182,[1] and the Rehabilitation Act makes it unlawful to exclude a "qualified individual with a disability . . . solely by reason of her . . . disability," from any "program or activity

---

[1] Although some courts have concluded that private apartment complexes are not subject to the ADA because they do not constitute "public accommodations," *see, e.g.*, *Parham v. CIH Properties, Inc.*, No. 14-cv-1613, 2015 WL 5294683, at *3 (D.D.C. Sept. 8, 2015) (collecting cases); *Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993), Defendants concede that the federally subsidized housing at issue in this case is subject to the ADA, *see* Dkt. 62-2 at 3–4.  In any event, the question matters little for present purposes because Simmons can pursue a similar claim under Section 504 of the Rehabilitation Act.  *See Chenari v. George Wash. Univ.*, 847 F.3d 740, 746 (D.C. Cir. 2017); *see also Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999) ("Claims and defenses under the two statutes are virtually identical.").

receiving Federal financial assistance" or to "subject[] [that person] to discrimination under [such] program or activity," 29 U.S.C. § 794(a).

To prevail on an FHA reasonable-accommodation claim, a plaintiff must prove that (1) she "is disabled within the meaning of the FHA;" (2) she "requested a reasonable accommodation;" (3) "the requested accommodation was necessary to afford h[er] an opportunity to use and enjoy h[er] dwelling;" and (4) "the defendants refused to make the accommodation." *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1285 (11th Cir. 2014); *see also Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014); *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003); *United States v. District of Columbia*, 538 F. Supp. 2d 211, 217–18 (D.D.C. 2008). That inquiry merges with the reasonable-accommodation test under the ADA and the Rehabilitation Act because courts applying the FHA's reasonable-accommodation provision have typically looked to "the line of decisions interpreting 'reasonable accommodations' in Section 504" of the Rehabilitation Act. *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996); *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1260 n.2 (D.C. Cir. 2008) (explaining "cases interpreting [the Rehabilitation Act and Title II of the ADA] are applicable and interchangeable" (internal citation and quotation marks omitted)); *Arthur v. D.C. Hous. Auth.*, No. 18-cv-2037, 2020 WL 1821111, at *9 (D.D.C. Apr. 11, 2020) (citing an ADA case in the FHA context). The same is true of the DCHRA: courts interpreting that statute "have generally looked [for guidance] to cases from the federal courts' arising under federal civil rights statutes." *Whitbeck v. Vital Signs, Inc.*, 116 F.3d 588, 591 (D.C. Cir. 1997) (alteration in original) (quoting *Benefits Comm. Corp. v. Klieforth*, 642 A.2d 1299, 1301–02 (D.C. 1994)).

Supreme Court and D.C. Circuit caselaw has construed the "reasonable accommodation" requirement to demand an accommodation that "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases," unless the defendant can "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002) (interpreting Title I of the ADA); *see also Seth v. District of Columbia*, 813 F. App'x 611, 614 (D.C. Cir. 2020) (applying this same approach to Title II of the ADA); *Barth v. Gelb*, 2 F.3d 1180, 1187 (D.C. Cir. 1993) (concluding, in the Rehabilitation Act context, that "a reasonable accommodation is one employing a *method of accommodation* that is reasonable in the run of cases, whereas the undue hardship inquiry focuses on the hardships imposed by the plaintiff's preferred accommodation in the context of the particular agency's operations" (emphasis in original)). *But see Paulson*, 525 F.3d at 1266 (casting some doubt on the proposition that "plaintiffs' burden includes demonstrating that a proposed accommodation is facially reasonable" in the Rehabilitation Act context).

Here, Defendants make two principal arguments in their motion for summary judgment. First, they argue that Simmons' requested accommodation was not a "reasonable" one because she made a "very specific, narrow request"—a "three-bedroom ground floor unit." Dkt. 62-2 at 5. Second, they contend that Simmons' request was never "denied." *Id.* at 6. On their telling, "Defendants . . . made an extraordinary effort to assist her, but simply could not meet the very specific, narrow requirements set forth . . . in her request for an accommodation." *Id.* That second assertion is a (minor) variation on the undue-hardship question: Defendants essentially contend that, although they wanted to accommodate Plaintiff's request, doing so was not feasible because "ground-floor three-bedroom unit[s]" were "a commodity that was quite scarce" at Langston Lane. *Id.*

In support of these arguments, Defendants set forth twelve facts as to which they contend there is no genuine dispute, Dkt. 62-1 at 1–2 (Defendants' Statement of Material Facts ("Defs.' SUMF")), all but one of which relies on a single piece of evidence: the February 26, 2021 deposition of Joseph Anthony Ross, the president and co-principal of Defendant ResidentialONE, LLC, who was previously "in charge of the management operation at the Langston Lane Apartments." Dkt. 74-1 at 4 (Ross Dep. 9:8–11; 11:11–16). Relying on that deposition, Defendants assert that: (1) "Plaintiff requested a ground-floor three-bedroom apartment at Langston Lane," Dkt. 62-1 at 1 (Defs.' SUMF ¶ 4); (2) "Plaintiff's request for an accommodation was approved," but that "[a] unit meeting plaintiff's request was not available,"[2] *id.* at 2 (Defs.' SUMF ¶¶ 5–6); (3) "Plaintiff was placed on a waitlist" for the "four three-bedroom apartments located on the ground floor" at Langston Lane, *id.* (Defs.' SUMF ¶¶ 8, 10); and (4) "Mr. Ross attempted to find the accommodation requested by Plaintiff by searching the greater Residential One portfolio and directly communicating with HUD," *id.* (Defs.' SUMF ¶ 11). Plaintiff contests the second and third of these premises, arguing that "[t]here is no evidence that Plaintiff was put on the waiting list" and that Ross's deposition was "contradictory

---

[2] The notion that Plaintiff's specific accommodation request was actually "approved" is not borne out in the record. It is undisputed that Simmons "requested a ground-floor three-bedroom apartment at Langston Lane." Dkt. 73-1 at 19 (Pl.'s Response to Defs.' SUMF ¶ 4). And although Defendants contend that "Plaintiff's request for an accommodation was approved," Dkt. 62-1 at 2 (Defs.' SUMF ¶ 5), the deposition transcript cited for that proposition states that Simmons "was approved to occupy the *next available, suitable* unit at Langston Lane," Dkt. 74-1 at 8 (Ross Dep. 27:12–13) (emphasis added). Defendants do not indicate why approval to occupy the "next available, suitable" unit satisfies Plaintiff's request to occupy a ground-floor, three-bedroom apartment.

7

as to whether or not there were three-bedroom apartments [available] during the time frame of the reasonable accommodation."[3] Dkt. 73-1 at 21 (Pl.'s Response to Defs.' SUMF ¶ 10).

Based on this sparse evidence, the Court cannot conclude that Defendants have successfully "b[orn] the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact" as to the unreasonableness of Plaintiff's accommodation request. *Celotex Corp.*, 477 U.S. at 323. To start, Defendants offer nothing more than ipse dixit in support of the contention that the "method of accommodation" requested by Simmons—here, the relocation to a similarly-sized apartment on the ground floor of her apartment building, *see* Dkt. 62-1 at 1 (Defs.' SUMF ¶ 4); Dkt. 73-1 at 19 (Pl.'s Response to Defs.' SUMF ¶ 4)—is "[un]reasonable in the run of cases," *Barth*, 2 F.3d at 1187 (emphasis removed); *see also U.S. Airways, Inc.*, 535 U.S. at 402 (citing this standard from *Barth*). Nor do Defendants press the argument that Simmons' requested accommodation is categorically unreasonable; they seek, instead, to establish that "special (. . . case-specific) circumstances . . . demonstrate" why Plaintiff's request for a three-bedroom is unreasonable or unduly burdensome. *See U.S. Airways, Inc.*, 535 U.S. at 402; *Taylor v. Rice*, 451 F.3d 898, 908 (D.C. Cir. 2006) (recognizing that, although "[w]hether a proposed accommodation is reasonable and whether it imposes undue hardship are separate inquiries, . . . "the analyses often overlap, especially when evaluating as-applied claims of reasonableness" (internal citation omitted)).

---

[3] Although an earlier filing by Plaintiff also "[d]enied" that Ross had searched the greater Residential One portfolio, Dkt. 70-1 at 2, that initial response provided no explanation beyond a bare denial and accordingly failed to comply with the requirements—set out in the Federal Rules of Civil Procedure and in this Court's local rules—for contesting factual assertions. Because a court can "consider [a] fact undisputed for purposes" of a summary judgment motion where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," Fed. R. Civ. P. 56(e), the Court concludes that Plaintiff's conclusory "[d]eni[al]" of that fact, without reference to the record, is insufficient to create any genuine dispute thereto.

Defendants contend, instead, that the "commodity" of three-bedroom, ground floor apartments "was quite scarce," Dkt. 62-2 at 6; that "[a] unit meeting plaintiff's request was not available" during the relevant timeframe, Dkt. 62-1 at 2 (Defs.' SUMF ¶ 6); and that Defendants accordingly could not accommodate Plaintiff's request without "evict[ing] tenants currently residing in three-bedroom ground floor units," Dkt. 62-2 at 6.

Defendants' argument fails for one simple reason: those factual assertions are not supported by undisputed evidence. At his deposition, Ross testified that he did not "recall" whether a qualifying apartment "became available" in Simmons' building, Dkt. 74-1 at 10 (Ross Dep. 33:13–17), but that "even i[f] there w[as] [an available unit], it d[idn't] necessarily mean that Ms. Simmons would have been next in line for it" given the relevant "wait lists," *id.* (Ross Dep. 33:17–20). Although Ross indicated at another point in his deposition that no "suitable unit" became available at Langston Lane before "December 31st, 2018," *id.* at 8 (Ross Dep. 27:12–18), Ross's contradictory testimony cannot establish—as a matter of undisputed fact— that "[a] unit meeting plaintiff's request was *not* available." Dkt. 62-1 at 2 (Def.'s SUMF ¶ 6); *see also* Dkt. 73-1 at 21 (Pl.'s Response to Defs.' SUMF ¶ 10) (arguing that "the testimony of the witness, Tony Ross[,] was contradictory as to whether or not there were three-bedroom apartments during the time frame of the reasonable accommodation").

Nor does the testimony that Simmons was not "next in line" on the waitlist for an available apartment establish, on its own, that granting Simmons' accommodation request would have "impose[d] . . . 'undue financial and administrative burdens on [Defendants] or require[d] a fundamental alteration in the nature of [their] program.'" *Barth*, 2 F.3d at 1187 (quoting *Sch. Bd. of Nassau Cty. v. Airline*, 480 U.S. 273, 287 n.17 (1987)). Defendants do not describe the nature of this waitlist; nor do they elucidate whether those listed above Simmons on the list had

9

requested similar disability-related accommodations that precluded reshuffling the list or that they would have declined an alternate apartment, including Simmons' second-floor apartment. And even if prioritizing Simmons' request would have deviated from a policy of assigning available apartments in the waitlist order, "the fact that an accommodation would require a change in policy does not necessarily demonstrate unreasonableness or undue hardship." *Taylor*, 451 F.3d at 911; *see also U.S. Airways*, 535 U.S. at 397 ("[T]he fact that the [proposed] difference in treatment violates an employer's disability-neutral rule cannot by itself place an accommodation beyond the Act's potential reach.").

Because Defendants have failed to proffer undisputed evidence supporting their defense—and establishing that no reasonable jury could find in Simmons' favor—the Court will deny Defendants' motion for partial summary judgment on Plaintiff's FHA, ADA, DCHRA, and Rehabilitation Act claims. To be clear, the Court does not hold that Simmons is entitled to relief, only that Defendants have not carried their burden of demonstrating that there is no issue for trial.

**B.      Retaliation under the DCHRA**

The Court turns next to Simmons' partial cross-motion for summary judgment on her DCHRA retaliation claim. Dkt. 67. Although Plaintiff's motion for summary judgment seeks to add retaliation claims "under the ADA [and] the Rehabilitation Act," Dkt. 67 at 3, her complaint labels those claims as "Retaliation DCHRA" and cites exclusively to provisions of the D.C. Code, *see* Dkt. 16-1 at 21–23 (3d Am. Compl. ¶¶ 74–77). Simmons has not moved to amend her complaint to add ADA or Rehabilitation Act claims, and she cannot expand the scope of her complaint by merely referencing additional claims in her brief. *Cf. Manna v. U.S. Dep't of Just.*, 106 F. Supp. 3d 16, 19 (D.D.C. 2015) ("[A plaintiff] cannot expand the scope of this litigation by

merely referring to other requests in [her] opposition to Defendants' motion."). The Court will, accordingly, address only the DCHRA.

The DCHRA provides that it is "an unlawful discriminatory practice to . . . retaliate against . . . any person . . . on account of having exercised or enjoyed . . . any right granted or protected under this chapter." D.C. Code § 2–1402.61(a). The familiar *McDonnell Douglas* framework governs DCHRA retaliation claims. *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 235–36 n. 3 (D.C. Cir. 1999). "Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action . . . ; and (3) that a causal link connects the two." *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). But because this is *Plaintiff's* motion for summary judgment, she must do more than "establish a prima facie case" of retaliation. *Id.* To warrant summary judgment on her claim, she must proffer undisputed evidence sufficient to show that she is entitled to relief. *Borgo v. Goldin*, 204 F.3d 251, 257 (D.C. Cir. 2000). "Accordingly, the court must ask whether, based on all the record evidence, a reasonable jury could reach no conclusion other than that [Defendants'] stated reason was not the actual reason for the [allegedly adverse action] and that, in fact, [Defendants] 'intentionally [retaliated] against the plaintiff.'" *Bradley v. D.C. Pub. Schs.*, 222 F. Supp. 3d 24, 30 (D.D.C. 2016) (quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008)).

On Simmons' telling, she engaged in three "protected activities" that are relevant to her retaliation claim: (1) requesting a ground-floor, three-bedroom apartment due to her disability; (2) reporting housing code violations (in an April 9, 2018 verified complaint with the D.C. Superior Court and in an April 11, 2018 housing discrimination complaint to HUD); and

(3) "organiz[ing] a group of tenants to sign a petition for the removal of Defendant Annette Anderson." Dkt. 67 at 7–10. And she contends that because she engaged in those activities, she was subjected to two adverse actions. First, Defendants Annette Anderson and Vickie Williams filed a defamation suit against her on April 11, 2018. Dkt. 67 at 10. Second, Defendants "mismanaged [her] rental account," resulting in a series of "Notices for Back Rent due that was not owed," *id.* at 10, and, ultimately, in a July 19, 2018 "suit for Possession of Real Estate for nonpayment of Rent," *id.* at 11.

As an initial matter, the Court notes that Plaintiff cites no caselaw or statutory provisions for the proposition that these allegedly "protected activities" were in fact "right[s] granted or protected under th[e] [DCHRA]." D.C. Code § 2–1402.61(a).[4] But the Court need not, at least at this juncture, address whether Plaintiff's actions were protected—or whether Defendants' actions were "adverse"—because Simmons' motion fails for another reason. In particular, she has failed to carry her burden of showing that no reasonable jury could credit Defendants stated reasons for filing suit against her and for issuing notices of back rent or find that Defendants otherwise acted without retaliatory intent. *See Bradley*, 222 F. Supp. 3d at 30.

The Court begins by considering the allegedly retaliatory lawsuit Anderson and Williams filed against Plaintiff on April 11, 2018. Plaintiff argues that there is a "causal connection" between that suit and her "protected activity;" in broad strokes, she argues that "there is a plethora of evidence of temporal proximity sufficient to support an inference . . . of actual

---

[4] Plaintiff does, for the first time in her reply brief, argue that her effort to get other tenants to sign a petition seeking Anderson's removal was a "protected activit[y]" under D.C. Code § 42-3505.02(b), a provision of the D.C. Housing Code that regulates retaliatory action against tenants. Dkt. 73 at 9. But Plaintiff's complaint does not plead a retaliation claim under D.C. Code § 42-3505.02, *see* Dkt. 16-1 (3d. Am. Compl.); nor does she contend that the DCHRA incorporates the retaliatory actions listed in that provision of the Housing Code.

12

retaliatory motive." Dkt. 67 at 12.  But mere "temporal proximity"—which the D.C. Circuit has held insufficient to defeat an *opposing party's* motion for summary judgment, *see Minter v. District of Columbia*, 809 F.3d 66, 71–72 (D.C. Cir. 2015)—cannot provide evidence of retaliation that is *sufficient* to enter judgment as a matter of law in *movant's* favor, *see Bradley*, 222 F. Supp. 3d at 30.  That is especially true where, as here, Defendants have proffered a non-retaliatory reason for filing the defamation suit: that is, Plaintiff's apparent "vitriol towards the Defendants."  Dkt. 72 at 7.  In support of that defense, Defendants cite two of Plaintiff's exhibits: one contains Anderson's notes of an April 9, 2018 interaction with Simmons, in which Simmons apparently threatened to kill Anderson, Dkt. 69-3 at 71 (Pl.'s Ex. 40); the other is a "Barring Notice" that precludes Simmons from "coming inside of the Rental Office" because she apparently "[u]sed abusive language towards Management staff in the Rental Office" and "[c]aused a disturbance" to which "[p]olice were called," Dkt. 69-5 at 44 (Pl.'s Ex. 58).  Plaintiff offers no argument or evidence to rebut those exhibits, which she herself provided to this Court, or to establish that Plaintiff's confrontation with Langston Lane staff on April 9, 2018 was "not the actual reason" for Defendants' defamation lawsuit.  *Bradley*, 222 F. Supp. 3d at 30.  In any event, this evidence—construed, as it must be, in Defendants' favor, *see Borgo*, 204 F.3d at 257—raises a genuine issue of fact about what motivated Anderson and Williams to file suit in April 2018.  The Court, accordingly, cannot conclude as a matter of law that their motive was a retaliatory one.

Nor has Plaintiff shown as a matter of law that Defendants mismanaged her rental account or brought suit for non-payment of rent because Simmons engaged in any protected activities.  Dkt. 67 at 10–11.  For the reasons explained above, the mere "temporal proximity" between those management and rent-collection efforts and Plaintiff's allegedly protected

13

activities is insufficient to support entry of summary judgment in Plaintiff's favor. *Bradley*, 222 F. Supp. 3d at 30.  And here, as above, Defendants have offered a legitimate, non-retaliatory explanation for their actions, which Plaintiff has failed to rebut.  Pointing to one of Plaintiff's exhibits, Defendants explain that they issued the nonpayment notices—and ultimately filed suit—because "Simmons did not make any rental payments between May 2017 and February 2019."  Dkt. 72-1 at 11 (Defs.' Response to Pl.'s SUMF ¶ 14); *see also* Dkt. 69-3 at 12 (Pl.'s Ex. 31).  Plaintiff counters that she made her rent payments into a "court registry" between July 2018 and August 2019.  Dkt. 73-1 at 15 (Pl.'s Reply as to Pl.'s SUMF ¶ 14); *see also* Dkt. 69-5 at 48 (Pl.'s Ex. 59) (showing a court record of "Receipts" with several $281.00 payments by Simmons between August 2018 and July 2019).  But she altogether fails to address her alleged nonpayment of rent in the most critical months, which are those *before* Defendants filed suit for nonpayment of rent in July 2018.  Because a reasonable jury could find, on this basis alone, that Defendants' rent-collection efforts were motivated by Plaintiff's nonpayment of rent—and not by a desire to retaliate—the Court cannot enter summary judgment in favor of Simmons on her retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion for summary judgment, Dkt. 62, is hereby **DENIED**, and Plaintiff's partial cross-motion for summary judgment, Dkt. 67, is also **DENIED**.  It is further **ORDERED** that the parties shall file a joint status report on or before April 14, 2023, proposing next steps in the case.

    **SO ORDERED**.

                      /s/ Randolph D. Moss
                      RANDOLPH D. MOSS
                      United States District Judge

Date:  March 31, 2023